UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
CHARLES DABYDEEN,

    Plaintiff,

-against-

WELLS FARGO BANK, N.A.; CARRINGTON
MORTGAGE SERVICES, LLC; LISA
JADIDIAN; SHAPIRO, DICARO & BARAK,
LLC,

    Defendants.
------------------------------------X

Rec'd 6/29/18

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUN 29 2018 ★
BROOKLYN OFFICE

**Not for Publication**

**MEMORANDUM & ORDER**

18-CV-3396(KAM)

**MATSUMOTO, United States District Judge:**

On June 8, 2018, plaintiff Charles Dabydeen ("plaintiff"), a resident of Queens Village, New York, proceeding *pro se*, commenced the instant action by filing a complaint ("Compl." or the "complaint," ECF No. 1) in this court. In the complaint, plaintiff states that he seeks an emergency temporary restraining order and/or a preliminary injunction "to urgently and immediately enjoin and restrain defendants" from foreclosing on and selling his real property located in Queens Village, New York. (Compl. at 1, 3.)

For the reasons discussed below, the complaint is dismissed for lack of federal subject matter jurisdiction, and plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint. Additionally, because it is clear from the face of the complaint that the court lacks subject matter jurisdiction over this

action, plaintiff's request for a temporary restraining order and/or preliminary injunction is denied.

## BACKGROUND

Plaintiff resides in Queens Village, New York, and has named as defendants Wells Fargo Bank N.A. ("Wells Fargo"), located in San Francisco, California; Carrington Mortgage Services, LLC ("Carrington"), located in Santa Ana, California; Lisa Jadidian, Esq. ("Jadidian"), located in Long Island City, New York; and Shapiro, DiCaro & Barak, LLC ("Shapiro"), located in Rochester, New York. (Compl. at 1.) In addition to his request for a temporary restraining order and/or preliminary injunction as noted above (*see id.* at 3), plaintiff seeks, *inter alia*, injunctive relief "to prevent the foreclosure/sale of [his] property," which is located at 94-44 214th Street, Queens Village, New York (the "Property"), and an award of $5,000,000. (Compl. at 8.)

## STANDARD OF REVIEW

### I.  Pro Se Pleadings and Sufficiency of Complaint

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). At the pleadings stage of the proceeding, the court must assume the truth of "all well-

pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) and *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. Subject Matter Jurisdiction

Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." (citation omitted)). If a federal court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62-63 (2d Cir. 2009).

The basic statutory grants of subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. "Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S.C. § 1331

3

or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Moore v. Angiuli & Gentile, LLP*, No. 12-CV-2966(DLI)(LB), 2012 WL 3288747, at *2 (E.D.N.Y. Aug. 9, 2012) (citing *Arbaugh*, 546 U.S. at 513).

Diversity jurisdiction exists where, as relevant to this action, "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). A plaintiff properly invokes federal question jurisdiction where he or she "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 546, U.S. at 513 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)).

## DISCUSSION

I. **Subject Matter Jurisdiction**

A. **Diversity Jurisdiction**

Here, plaintiff alleges diversity jurisdiction, but complete diversity does not exist between the parties as plaintiff and defendant Jadidian, as residents of New York, appear to be citizens of the same state. *See Handelsman v. Bedford Vill. Assocs.*, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that all of the adverse parties in a suit be completely diverse with regard to citizenship." (internal quotation marks and citations omitted)).

4

Additionally, although the complaint does not contain allegations as to the citizenship of Shapiro's members, if any of Shapiro's members are New York citizens, Shapiro would also destroy diversity. *See id.* at 51-52 (citations omitted) (concluding that no diversity jurisdiction existed where individual plaintiff and members of defendant partnership and LLC were citizens of the same state); *see also ICON MW, LLC v. Hofmeister*, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013) ("With the exception of corporations, the citizenship of business entities is derived from the citizenship of all members of the entity. In particular, limited liability companies . . . obtain citizenship from each of their members." (citing, *inter alia*, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990) and *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012))).

Accordingly, based on Jadidian's presence as a defendant, the court lacks diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is not complete diversity between the parties.

B.  **Federal Question Jurisdiction**

Plaintiff alleges federal question jurisdiction under various federal statutes and regulations. The complaint expressly cites 42 U.S.C. § 1983 ("section 1983") and 18 U.S.C. § 241 as bases for federal question jurisdiction. (Compl. at

5

1.) Additionally, although not expressly cited as bases for federal subject matter jurisdiction, the complaint references the Freedom of Information Act, 5 U.S.C. § 552, the ESIGN Act, 15 U.S.C. §§ 7001 et seq., and various provisions of the Code of Federal Regulations. (See Compl. at 3-4 (citing, in relevant part, 5 U.S.C. § 552; 7 C.F.R. § 1901.508; and 12 C.F.R. §§ 226, 741.6(b), 1831n(a)(2)(A)). None of these sources of law, however, form the basis for a colorable federal claim in the instant action.

1. **Section 1983**

Section 1983 requires that "the conduct complained of must have been committed by a person acting under color of state law" and "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citations omitted). Section 1983 imposes liability for constitutional deprivations caused by state actors, and cannot be applied to the actions of private individuals or private organizations.

The Supreme Court has noted that "the under-color-of-state-law element of [section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citations omitted).

Here, none of the named defendants are alleged to be state actors or to be acting "under color of state law." Section 1983 therefore cannot serve as a basis for federal question jurisdiction in the instant action.

2.  **Federal Criminal Statutes**

Plaintiff also alleges federal question jurisdiction under various criminal statutes set forth in title 18 of the United States Code. (Compl. at 1 (citing 18 U.S.C. § 241), and at 7 (citing 18 U.S.C. Ch. 41, 47, 95 and §§ 241-42, 872-73, 876, 880, 1001, 1957).) "'It is a truism' long recognized by federal courts 'that in our federal system crimes are always prosecuted by the Federal Government,' not by private complaints." *Dourlain v. Comm'r of Taxation & Fin.*, 133 F. App'x 765, 767 (2d Cir. 2005) (quoting *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)).

Although a party may be able to show that Congress intended a particular statute to be privately enforceable, *see id.* at 767-68 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)), plaintiff here has made no such showing with respect to any of the federal criminal statutes he cites, and accordingly none of those statutes can serve as the basis for federal question jurisdiction.

### 3. Freedom of Information Act

The Freedom of Information Act, by its own terms, applies to federal agencies, not private actors. *See* 5 U.S.C. § 552(a) (providing that "[e]ach *agency* shall make available to the public information" as set forth in the statute (emphasis added)). Therefore, even construing the complaint liberally, the court concludes that the Freedom of Information Act is wholly inapplicable and irrelevant to the allegations set forth in the complaint.

### 4. ESIGN Act

The ESIGN Act governs the use of electronic signatures and forms in transactions affecting interstate commerce. *See* 15 U.S.C. § 7001(a). Thus, although the ESIGN act may be relevant to the adjudication of a contract dispute, it cannot form the basis for federal question jurisdiction. *See Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 981 F. Supp. 2d 144, 149 (E.D.N.Y. 2013) ("At best, the [ESIGN Act] provides a defense to New York's application of its tax law to deny favorable treatment to E-Sign mortgage and note assignments, and even more remotely, perhaps, a defense to plaintiffs' claims here. But, such tangential connections do not support federal question jurisdiction." (footnote omitted)), *vacated on other grounds*, 749 F.3d 137 (2d Cir. 2014).

### 5. Federal Regulations

Plaintiff's references to the Code of Federal Regulations fare no better and provide no basis for federal question jurisdiction. Plaintiff refers to "Title 12 CFR Section 1831 n(a)(2)(a) [sic]" (Compl. at 4), but there is no section 1831 or 1831n within title 12 of the Code of Federal Regulations.

Additionally, plaintiff refers to part 1901 of title 7 of the Code of Federal Regulations generally (Compl. at 6), and to 7 C.F.R. § 1901.508 specifically (*id.* at 4), but these regulations relate to Department of Agriculture programs, see 7 C.F.R. Ch. XVIII and §§ 1900.1-1980.1100, and are therefore irrelevant to this action, which does not involve any Department of Agriculture program. Similarly, plaintiff refers to 12 C.F.R. § 741.6(b) (Compl. at 4), but this provision relates to financial reporting by credit unions subject to regulation by the National Credit Union Administration ("NCUA"), see 12 C.F.R. 741.6(a)-(b), and is irrelevant to this action because this action does not involve any NCUA-member credit union.

### 6. Truth in Lending Act

Finally, plaintiff refers to part 226 of Title 12 of the Code of Federal Regulations. (Compl. at 3.) Part 226 of title 12 of the Code of Federal Regulations is also known as "Regulation Z," and "is issued by the Board of Governors of the

9

Federal Reserve System to implement the federal Truth in Lending Act." 12 C.F.R. § 226.1(a). Construed liberally, plaintiff's reference to Regulation Z could be read to allege federal question jurisdiction under the Truth in Lending Act ("TILA").

"In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information." *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011) (citing 15 U.S.C. § 1632). Here, although the complaint states that "FULL DISCLOSURE ABOUT THE CONTRACT IS IMPERATIVE" (Compl. at 7), the complaint's factual allegations go to the validity of various documents relevant to the state court foreclosure action, not disclosures in lending. For instance, plaintiff asserts that the signature on the promissory note at issue in the foreclosure action is "NOT [his] signature," and is a "forged instrument." (*Id.* at 4.) Plaintiff also asserts that he "never borrowed or took a mortgage" from any defendant. (*Id.*) From these assertions, it necessarily follows that no defendant could have failed to provide "clear, conspicuous and accurate disclosures of . . . loan terms" to plaintiff. *Midouin*, 834 F. Supp. 2d at 102. Moreover, plaintiff could have raised these issues in the underlying foreclosure action.

Accordingly, plaintiff has not pleaded any "colorable claim 'arising under' the Constitution or laws of the United

States," *Arbaugh*, 546, U.S. at 513 (citing *Bell*, 327 U.S. at 681-85), and the court lacks federal question jurisdiction over the instant action.

C. **Summary**

For the reasons set forth above, the complaint does not properly assert federal diversity or federal question subject matter jurisdiction, and accordingly, plaintiff's complaint is dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Additionally, because the court lacks subject matter jurisdiction, plaintiff's request for a temporary restraining order and/or preliminary injunction is denied. *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 384 (E.D.N.Y. 2016) ("Thus, as is true of civil actions generally, an independent basis for asserting federal question or diversity jurisdiction must be shown, in order for a court to grant preliminary relief." (internal quotation marks and citations omitted) (collecting cases)).

II. ***Rooker-Feldman* Doctrine**

Here, the complaint attaches an affidavit by Joseph R. Esquivel, Jr., a private investigator. (Compl. at 10-15 of

126.)[1] Mr. Esquivel's affidavit references an action filed in "District Court Queens County New York [sic]" on January 15, 2016, and assigned Index Number 700877/2016. (*Id.* at 12 of 126.) Although the court found no case with the above-described Index Number in "District Court" for Queens County, the Queens County Supreme Court's records indicate that plaintiff and Wells Fargo are parties to a foreclosure action assigned Index Number 700877/2016 and captioned *Wells Fargo Bank, N.A. v. Charles Dabydeen, et al.* (the "Foreclosure Action"). The court may take judicial notice of the relevant state court filings in this action to establish "the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted); *see also Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012) ("Judicial notice of public records is appropriate . . . because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned." (citations omitted)), *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013).

The complaint in the Foreclosure Action, which is dated January 15, 2016 makes clear that it relates to Wells Fargo's efforts to foreclose on the Property at issue in the

---

[1] References to specific pages in citations to Mr. Esquivel's affidavit are to the pagination generated by the court's ECF system.

complaint presently before this court. (*See generally* Mortgage Foreclosure Complaint, Queens Cty. Sup. Ct. Index No. 700877/2016, NYSECF Doc. No. 2.) Further, a review of the docket in the foreclosure action indicates that the Honorable Allan B. Weiss, Justice of the Supreme Court, entered a judgment of foreclosure on April 17, 2018. (Judgment of Foreclosure and Sale ("Foreclosure Judgment"), Queens Cty. Sup. Ct. Index No. 700877/2016, NYSECF Doc. No. 115.) The Foreclosure Judgment clearly states that it relates to the 94-44 214th Street, Queens Village, New York, *i.e.*, the Property at issue in this action. (*Id.* at 8.)

Additionally, the Foreclosure Judgment indicates that Shapiro represented Wells Fargo in the Foreclosure Action and Jadídian was the court-appointed referee. (*Id.* at 2.) Further, according to the complaint, Carrington was the servicer for plaintiff's mortgage loan. (Mortgage Foreclosure Complaint, Queens Cty. Sup. Ct. Index No. 700877/2016, NYSECF Doc. No. 2, at 2.)

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15 (1923);

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine applies where

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.

*Vossbrinck*, 773 F.3d at 426 (internal quotation marks and citation omitted).

Notably, the *Rooker-Feldman* doctrine divests federal district courts of jurisdiction where a plaintiff seeks to invalidate a foreclosure judgment, even where a plaintiff asserts that the foreclosure judgment was obtained by fraudulent means. *Id.* at 427 ("To the extent [plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [his] claim."). However, *Rooker-Feldman* may not bar all claims in such a situation, for instance, claims for money damages for injuries suffered from alleged fraud, "the adjudication of which does not require the federal court to sit in review of state court judgment," although these claims may otherwise be barred, including by collateral estoppel or issue preclusion. *Id.* at 427-28.

Here, although the court has concluded that the instant action must be dismissed for lack of subject matter

14

jurisdiction on other grounds, all four *Rooker-Feldman* factors apply to bar plaintiff's instant action to the extent he seeks to have the court set aside the Foreclosure Judgment.. However, as set forth below, the court grants plaintiff an opportunity to file an amended complaint no later than thirty (30) days from the date of this Memorandum and Order. Should he choose to do so, he should be aware that the court is bound by the *Rooker-Feldman* doctrine, and plead facts giving rise to claims that the *Rooker-Feldman* doctrine does not bar in the instant federal court action.

## CONCLUSION

For the reasons set forth herein, plaintiff's complaint is dismissed and his request for a temporary restraining order and/or preliminary injunction is denied.

In light of its duty to construe liberally *pro se* complaints, the court grants plaintiff leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order. *See Pearson v. Reid-Robinson*, 632 F. App'x 19, 19 (2d Cir. 2016) (noting that courts should allow leave to re-plead at least once if there is "any indication that a valid claim might be stated," and that plaintiffs may "drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship" (quoting *Cuoco v. Moritsugu*, 222 F.3d

15

99, 112 (2d Cir. 2000) and *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987))).

Plaintiff is advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Memorandum and Order. If plaintiff intends to invoke the court's diversity jurisdiction over this action, he must establish complete diversity of citizenship among himself and each defendant named in the amended complaint, meaning that no defendant can be a citizen of the same state as plaintiff. Although the court has reviewed the Complaint and Foreclosure Judgment in the Foreclosure Action, plaintiff should state the status of the Foreclosure Action, as well as of any other state court proceedings related to the Property and attach relevant documents, if available. He must also plead facts that would sustain claims not barred by the *Rooker-Feldman* doctrine.

If plaintiff fails to file an amended complaint within the time allowed, or if the amended complaint fails to cure the deficiencies discussed herein, an order shall issue dismissing this action without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). Although plaintiff paid the filing fee to bring this action, the court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma*

*pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to serve a copy of this Memorandum and Order on plaintiff at the address of record and to note service on the docket.

**SO ORDERED.**

Dated: June 29, 2018
       Brooklyn, New York

                                         /s/
                                 Kiyo A. Matsumoto
                                 United States District Judge